# EMMA WILLARD v. IOWA CENTRAL RAILWAY COMPANY.[1]

July 2, 1909.

Nos. 16,095—(120).

**Question of Construction of Train Orders for the Jury.**

In a personal injury action, the question being as to the proper construction to be placed upon certain train orders, it is *held* that the writings, when read in connection with the rules, customs, and usages of the company, were ambiguous, and that the court properly submitted the question whether the engineer placed the proper construction upon them as one of fact to the jury.

[1]Reported in 122 N. W. 169.

**Verdict Sustained by the Evidence.**

The evidence *held* to be sufficient to sustain a finding of the jury that the engineer of a train, in construing certain written orders, was not guilty of negligence in acting upon the understanding that the orders gave his train the right of track over a train which was approaching from the opposite direction.

**No Prejudicial Error.**

Certain rulings and instructions of the trial court considered, and found not to contain prejudicial error.

Action in the district court for Freeborn county by the administratrix of the estate of Eugene J. Willard, deceased, to recover $20,000 for the wrongful death of decedent in the state of Iowa. The case was tried before Kingsley, J., and a jury which returned a verdict in favor of plaintiff for $9,500. From an order denying defendant's motion for a new trial, it appealed. Affirmed.

*John I. Dille, N. E. Peterson, W. H. Bremner* and *Geo. W. Seevers,* for appellant.

*Dunn & Carlson,* for respondent.

ELLIOTT, J.

On February 20, 1906, Eugene J. Willard, an engineer in the employ of the Iowa Central Railway Company, while on duty, was killed by his train colliding with another train which was approaching from the opposite direction. In this action, brought by the administratrix of his estate, it is charged that the railway company was negligent in having another train upon the main line at the time of the collision. The defendant, in its answer, denied the charge of negligence, and alleged that the deceased came to his death through his own negligence in not obeying the rules of the company and orders giving the other train the right of way on the track where the collision occurred. The accident occurred in the state of Iowa, and the jury returned a verdict in favor of the plaintiff for $9,500. The appeal is from the order of the court overruling the defendant's motion for a new trial.

At the time of the accident the appellant owned and operated a railroad from Albert Lea, Minnesota, to Oskaloosa, Iowa, which ran nearly north and south. There were two daily freight trains running

108 M.—20.

between Albert Lea and Oskaloosa—one, No. 93, going north, and the other, No. 92, going south. By the time card the south-bound train was the superior, and in the absence of train orders to the contrary, had the right as against the north-bound train to be on the main track. Mason City, Hampton, Ackley, Abbott, Eldora, Gifford, and Marshalltown are stations between Albert Lea and Oskaloosa, in the order named, going south toward Oskaloosa. On the day of the accident No. 92 going south was running in sections south of Hampton, and under the rules both sections had the right of way over No. 93, the train which was in charge of Willard, the deceased engineer. No. 93 proceeded north to Marshalltown and there waited for orders, as without orders it could not proceed beyond that point without trespassing upon the rights of the superior train, No. 92. While at Marshalltown, according to appellant's claims, No. 93 received the following order, which is referred to in the record as "Order No. 7," namely:

"No. 93 has right over 1st No. 92 Marshalltown to Abbott."

On this order No. 93 proceeded north to Gifford, where it received two orders—

The first, referred to as "Order No. 10," reading; "No. 93 gets this order and will meet 1st No. 92 at Gifford."

And the other, known as "Order No. 13," as follows: "No. 93 will meet 1st No. 92 at Eldora instead of Gifford and has right over No. 90 Gifford to Ackley. This to 1st 92 at Eldora."

The first section of No. 92 also received the same orders. In passing Gifford the first section of No. 92 displayed the usual flag signals and whistled, indicating that its second section was following. Train No. 93 proceeded to a point about one and one-half miles north of Eldora, where it collided with the second section of No. 92, and the engineer of No. 93 was killed.

One witness, Rodgers, testified that he saw Willard receive at Marshalltown an order in substance as follows: "No. 93 has right of track over No. 92 from Marshalltown to Abbott." This is evidently another reading of order No. 7, and, if that is the way the order ran, Willard was acting within his right. The appellant claims, however, that Rodgers was clearly mistaken, and that his statement cannot be accepted. The rules of the company, which were

in force before and at the time of the accident, contain the following provisions: "Superior Train.—A train having precedence over other trains. A train may be made superior by right, class, or direction. Right is conferred by train order; class and direction, by time-table. Right is superior to class and direction. Direction is superior as between trains of the same class." The importance of these provisions for our present purposes is found in the statement that "right is conferred by train order," because when train No. 93 started north it is conceded that it was acting under specific train orders.

1. The vital question arose upon the proper construction of these orders. The appellant contends that their meaning should have been determined by the court as a matter of law; but the trial court, in view of the fact that the employees of the railway company differed as to their meaning and claimed that they were to be construed in the light of established usages and customs, submitted the question to the jury as one of fact. The refusal to give an instruction which embodied the construction contended for by the defendant is assigned as error. That instruction was that:

"The rights of trains No. 93 and second No. 92 upon the tracks at the time and place of the collision were defined by the time-table and rules of the company and the train orders that are in evidence. The defendant contends that train orders Nos. 7, 10, and 13 were the only orders given that affected the movement of said trains at the time of the collision, while plaintiff claims that train order described by Fireman Rodgers, one of plaintiff's witnesses, giving train No. 93 right over No. 92 from Marshalltown to Abbott, was given and acted upon by Engineer Willard. You are instructed that train orders Nos. 7, 10, and 13, herein mentioned, and the time-table and rules of the defendant accompanying the same, were plain and unambiguous, and under them train No. Second 92 would have had the right to be on the track at the time and place of the collision, and train No. 93 had no right to be there. You are therefore instructed that if said orders were delivered to the conductor and engineer of train No. 93, as claimed by the defendant, and were not changed or modified by any other train order, such conductor and

engineer were both negligent in having train No. 93 upon the track at the time and place of the accident, and your verdict should be for the defendant."

The south-bound train (No. 92) under the rule was the superior train, and all its sections had the right of track over the north-bound train. The various sections constituted but one train. It was then the duty of No. 93 to yield the right of way to second No. 92, unless both sections of No. 92 were deprived of the superior right by a train order. Order No. 7 informed the men in charge of No. 93 that No. 93 had right of way over first No. 92 Marshalltown to Abbott, and rule No. 218 provided that: "When a train is named in a train order, all its sections are included, unless particular sections are specified." As order No. 7 designated the first No. 92 only, the appellant argues that it left the second No. 92 entitled to the right of way. If such is the correct construction, the second section of No. 92 had the right of way to the main track, and the men in charge of No. 93 were negligent when they started north on the main track, and the plaintiff cannot recover in this action. The appellant construed order No. 10 as simply a meet order, and No. 13 refers to train No. 90, which is not in any way involved in this case.

On the other hand the respondent contends that this is not the construction which the engineer, Willard, was required to place upon these orders, as it would have rendered them nugatory and prevented train No. 93 from proceeding from Marshalltown at all without violating other rules of the company, because the second section of No. 92 was at the time running upon the schedule provided in the time-table for No. 93; that is, the second section of No. 92 was due at Marshalltown when the order was given. Conductor Russell testified that if the order had specified that No. 93 had the right of way over first No. 92, but not the second No. 92, train No. 93 could not have proceeded. Hence the claim is that, unless order No. 7 could be given a construction which conferred a right over the second as well as the first No. 92, Willard's train would have been unable to proceed from Marshalltown, and that a construction which gave No. 93 the right to proceed as against both sections of No. 92

was the one which custom and usage required to be placed on the order.

The trial court ·instructed the jury very fully on the force of the rules and orders and the weight to be given usage and custom in their construction by the employees. The jury was told that it was necessary for the safety and operation of the trains and the safety of the public that the company should make rules and issue orders, and "it is necessary that the trainmen be required to observe and obey these rules and regulations, and if they fail to obey them when the rules are plain and unambiguous, and there is no custom or practice that has the effect to change or modify or supersede them, if they fail to obey them then they have failed to perform their duty, and if · injury results it is their loss and not the loss of the company. So that it was the duty of the engineer and conductor of train No. 93 to understand and know and obey the orders of the train dispatcher and the rules of the company according to the ordinary usages and customs and practice of the company at that time. If the ordinary usages and customs of the company at that time, as they were observed by the trainmen and the company, authorized Mr. Willard to construe this order, if that was the order that he received, to proceed beyond Eldora after having met the first section of train No. 92, then he was within his rights and was not negligent upon the occasion in question, and the plaintiff would be entitled to recover in this action. On the other hand, if the orders and rules of the company as construed by the employees of the company and the company itself in the operation of trains did not authorize train No. 93 to proceed beyond Eldora under this order and orders Number 10 and 13, then he was not within his right, and he had no right to proceed beyond Eldora, and, having done so, he, his widow, nor anybody else, would have a right of action in his behalf. So, you see, if you come to this branch of the case, the question for you to determine will be what were the rights of train No. 93 beyond Eldora, north of Eldora, at the time of the collision, under the orders which Mr. Willard had received and under the rules of the company as customarily construed and applied by the company in the management of its train service."

If the written orders were ambiguous, and there was any evidence reasonably tending to sustain the contention that any customs and

· usages existed in the light of which the orders should be construed, and that Willard acted in accordance therewith, the issue was properly ·submitted to the jury. Then (1) according to the ordinary usages and practices of the railway company, under which it required · its servants to construe the order, did order No. 7 confer a right on · No. 93 over both sections of No. 92 from Marshalltown to Abbott? If so (2) did orders Nos. 10 and 13 supersede order No. 7 as to second No. 92? .   .

The defendant's witnesses continually refer to the usages and · customs of the company as aids in the construction of the orders and rules, and they do not at all agree as to the construction which should ·· have been placed upon order No. 7. Mr. Landfear, the train dispatcher, testified that under orders Nos. 7, 10, and 13 train No. 93 had no right as against second No. 92 to proceed north after · meeting first No. 92 at Eldora; but he also said that, assuming that order No. 7 did give No. 93 the right of track over both sections of No. 92 from Marshalltown to Abbott, then No. 93 certainly had the right to proceed north from Eldora as against both sections. That right is exactly what the superintendent of the railway company testified was given to No. 93 by order No. 7, when read apart from the subsequent orders, Nos. 10 and 13. Trainmaster McCarthy also gave his opinion as to the proper construction of orders Nos. 7, 10, and 13, in the light of the time-card, rules, customs, and usages of the company. He construed order No. 7 as giving No. 93 the right over first No. 92 only, leaving its relation to the other section governed by the time-table and the rules; but on cross-examination he said:  ·  ·

. , "Q. So I say that any sensible or reasonable person would infer from that order [No. 7], as you claim it to be, that they had a clear track and that they were expected to go to Abbott, and they would not meet anything? A. Yes. Q. And you claim it is only because of some subsequent orders that that thing is interrupted? A. Yes."
: · In determining whether Willard was justified in construing the order as giving his train right of track over both sections of No. 92, it seems reasonable to give weight to the views of the superintendent of the railway company as to the proper construction of the orders. Mr. Hayden himself construed order No. 7 as giving No. 93 the

right of track over both sections of No. 92, but claimed that this right was terminated by the subsequent orders; that is, that when order No. 10 was given, order No. 7 was superseded.

"Q. Now, you say that under that order, that if they got no other orders, they were to proceed to Abbott? A. Yes, sir. Q. Against all of 92? A. Yes, sir. Q. Both sections? A. Yes, sir. Q. So in absence of any further orders—in the absence of these orders, that is—No. 7 gives them a right over all sections of 92 to Abbott? A. If they had not got any orders contradicting it. Q. Well, it gave them a right over the first section, and the second section could not run around the first section and proceed as second section. It would necessarily follow it gave them the right of way over both, in the absence of these meet orders? Necessarily so? A. Yes, sir. Q. You contend that by virtue of the meet orders that then it was their rights over 92 ceased? A. Yes, sir. * * * Q. But to get back to the other proposition: Then, first, order No. 7 gave them a right necessarily over both sections to Abbott unless it was—until it was changed by these meet orders? A. Yes, sir. Q. That is as you would construe it and the customs and usages of the road would construe it? A. Yes, sir."

Van Draske, the conductor of No. 92, also testified that he construed order No. 7 as giving train No. 93 the right of track over both sections of No. 92.

"Q. That would be the custom and construction during all the time you have been in the service of the road? A. Yes, sir. * * * Q. Now, then, armed with an order giving him the right over both sections to Abbott, he had a right to go to Abbott on that track until he received some order which denied him that right? A. Yes, sir."

With reference to order No. 7 the same witness testified:

"Q. Mr. Van Draske, making mention of first 92 in the first order then necessarily, under your testimony, was not essential to the order at all, was it? A. I don't understand your question. Q. I say that order would have been just as plain and meant the same if the word 'first' had been left out? A. No, sir. Q. I mean the effect of it, so far as running to Abbott? A. Yes, sir, it would have meant the same."

Anderson, the conductor of No. 93, testified: "Q. Now, you

told us just a minute ago that under the custom of your railroad as it existed that this order No 7 gave you the right of track over both sections. You remember that testimony, don't you? A. Yes, sir. Q. And you told us that that was the custom on the railroad at that time of advising you that you had the right over No. 92, and all sections of it? A. Yes, sir. Q. Now then, if that was the custom, then you had the right over No. 92, and over second No. 92, to Abbott until that part of the order was in some way superseded, didn't you? * * * A. Yes, that is right. * * * Q. When it said first 92, it meant second 92, also, did it? A. Yes, sir; so far as that order was concerned, it did. * * * Q. The reasons for that, to give it any force at all, it would have to be so. You could not proceed against first 92, without proceeding against second 92 at the same time? A. No, sir; we could not. Q. You were trespassing on the time of both when you proceeded? A. Yes, sir."

The jury was entitled to accept this testimony of the defendant's witnesses as to proper construction of order No. 7, and the question then is whether or not No. 93 was deprived of the rights thus conferred by the subsequent orders. We have already occupied too much space in detailing the evidence, and must content ourselves with the statement that there is evidence at least reasonably tending to show that these subsequent orders as construed by the practical men in charge of the work did not deprive No. 93 of the right to proceed after it had met the first section of No. 92. Of course, the evidence is not all one way; but, as we read it, the trial court was justified in refusing to give the requested instruction and in submitting the question to the jury.

2. There is no merit in the claim that the court erred in permitting the witness Anderson to be improperly cross-examined, and to testify to the usages and customs of the company and the meaning of orders Nos. 7, 10 and 13. From different constructions placed upon these orders by the defendant's own witnesses, or at least from the conflicting and confusing reason given by them for their conclusions, it is clear that the orders were ambiguous. Substantially the same questions were asked by the defendant of certain of its witnesses, and it is now claiming the benefit of their answers.

All the other assignments of error based on the rules and instruc-

tions of the court have been carefully considered and found to be without merit.

The order of the trial court is affirmed.